# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CASE NO. 3:10-CV-580

**BANCINSURE, INC.**                                                                        **PLAINTIFF**

v.

**FIRST BANK, INC., n/k/a CENTRAL**
**BANK OF JEFFERSON COUNTY, INC.**                                 **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff's Motion to Bifurcate Defendant's Unfair Claims Settlement Practices Act Claim and Common Law Bad Faith and Fraud Claim, and to Stay Discovery on Said Claims (Docket #22). Defendant has responded (Docket #24). Plaintiff has replied (Docket #28). This matter is now ripe for adjudication. For the following reasons, Plaintiff's motion is GRANTED.

## BACKGROUND

Effective March 18, 2002, BancInsure issued a Financial Institution Bond Number 16FIB00159-3 (the "Bond"). The Bond was in effect at all relevant times herein. Following issuance of the Bond, First Bank made a series of loans brokered by American Savings Mortgage ("ASM"). First Bank claims that these loans were made in reliance upon "forged appraisals, forged verifications of deposits and various other forged or altered underwriting documents that were provided by the mortgage broker and/or borrowers to First Bank." Def.'s Resp., DN 24, p. 1. First Bank alleges that its losses were in excess of $5 million. First Bank notified BancInsure of a potential claim in April or May of 2003. BancInsure wrote a letter to First Bank on September 29, 2003, which discussed various Bond provisions. The parties dispute the purposes of this letter and its accuracy. On October 19, 2004, BancInsure and First Bank entered into a

Tolling and Standstill Agreement allowing First Bank additional time to investigate its claim.

According to Plaintiff's Complaint, First Bank submitted a Proof of Loss on or about March 16, 2010, "seeking coverage for 106 loans that First Bank had previously sold to, and subsequently repurchased from, [Fannie Mae] and/or Wells Fargo." Compl., DN 1, ¶ 13. BancInsure filed this declaratory judgment action on September 7, 2010, seeking a judgment from the Court that it has no obligation to First Bank. On October 29, 2010, First Bank filed its Answer and Counterclaim. First Bank alleges that BancInsure is liable for (I) breach of contract, (II) violations of the Unfair Claims Settlement Practices Act, Ky. Rev. Stat. Ann. § 304.12-230 et seq. ("UCSPA"), and (III) common law bad faith and fraud. BancInsure now moves to bifurcate First Bank's Counts II and III and stay discovery on these matters until after an adjudication on the declaratory judgment and breach of contract claims. Trial is currently scheduled for February 21, 2012.

## DISCUSSION

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" Fed. R. Civ. P. 42(b). "The decision to sever issues for separate trials is within the sound discretion of the trial court." *Nylok Fastener Corp. v. Indus. Nut Corp.*, 122 F.R.D. 512 (N.D. Ohio 1988) (citing *Parmer v. Nat'l Cash Register Co.*, 503 F.2d 275, 277 (6th Cir. 1974)).

BancInsure argues that bifurcating the claims in this case would prevent prejudice and promote judicial economy. In contrast, First Bank believes bifurcation would be improper here because this case concerns a first party claim in which the bad faith claims and coverage issues are "inextricably intertwined."

In *Wittmer v. Jones*, the Kentucky Supreme Court set forth the proper procedure for adjudicating a case containing both an underlying claim and a bad faith claim. 864 S.W.2d 885 (Ky. 1993). In *Wittmer*, the plaintiff sued a party named Jones in tort for property damage to her car and in the same complaint sued State Farm Insurance for various bad faith claims. *Id.* at 887. The Kentucky Supreme Court stated that a bifurcated procedure was the proper way to try the case. *Id.* at 891. The court, relying on the Dissenting Opinion in *Federal Kemper Insurance Co. v. Hornback*, 711 S.W.2d 844 (Ky. 1986), found that bifurcation better protected the rights of the two different defendants as it kept out of the first trial "evidence which was relevant to the issue of bad faith but unnecessary and possibly prejudicial . . . in the trial of the preliminary question of liability." *Id.* (quoting *Federal Kemper*, 711 S.W.2d at 849). The Dissenting Opinion in *Federal Kemper* was incorporated by reference into the Majority Opinion in *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d at 178.

First Bank asserts that the decision in *Wittmer* not controlling here because this case involves a first party, not a third party, claim. Instead, First Bank urges the Court to adopt the reasoning of *Tharpe v. Ill. Nat'l Ins. Co.*. 199 F.R.D. 213 (W.D. Ky. 2001). In *Tharpe*, the plaintiff was involved in a motor vehicle accident and obtained chiropractic treatment for his injuries. *Id.* at 214. The plaintiff then sued his insurer for bad faith and failure to pay after the insurer refused to pay the chiropractor's bill in full. *Id.* The insurer moved to bifurcate the claims for purposes of trial and discovery. *Id.* In denying the motion, the court held:

> The evidence to be offered by [the insurer] to establish that it acted with a reasonable basis or upon a reasonable foundation is that its review of the chiropractor's bill established that some charges were excessive and/or unnecessary. [The insurer] would offer this same proof in order to defeat [the plaintiff's] claim that the bill should have been paid in full. The issues are inextricably intertwined.

3

> There is no purpose to be served by bifurcation of the claims in this case. The facts relating to the basis for denial of payment of the chiropractor's bill are applicable to all of [the plaintiff's] claims. The usual considerations which militate in favor of bifurcation are absent.

*Id.* at 215. First Bank believes the present case is similar to *Tharpe* because it involves a first party claim and the issues are inextricably intertwined.

Judge Coffman of the Eastern District of Kentucky recently addressed the issue of bifurcation in a similar case involving one of the same parties currently before the Court. In *Forcht Bank, N.A. v. BancInsure, Inc.*, BancInsure had issued an insurance bond to Forcht Bank, who was seeking coverage on a loss sustained on a defaulted loan. No. 10-259-JBC, 2010 WL 5673870, at *1 (E.D. Ky. Dec. 10, 2010). Forcht Bank also brought a claim for bad faith. *Id.* Judge Coffman held that "[t]he coverage and bad-faith claims are likely to involve distinct fact issues." *Id.* The coverage claim would likely focus on construction of the bond terms while the bad faith claims would look at BancInsure's "motive, conduct, and knowledge when it denied coverage." *Id.* Judge Coffman differentiated *Tharpe* by noting that the parties had not identified fact issues common to both claims. *Id.* Accordingly, BancInsure's motion to bifurcate discovery and the trial was granted. *Id.*

First Bank argues that, if the provisions of the bond are ambiguous, discovery related to the bad faith claims will overlap with the declaratory judgment and breach of contract claims because "it will also go to the credibility of BancInsure in its position on how the provisions relative to the forgery and alteration coverage should be interpreted . . . ." Def.'s Resp., DN 24, p. 8. In essence, First Bank seeks to use its bad faith claim evidence to impeach BancInsure on the coverage issue. The Court finds that this is not enough to create such common fact issues so that the claims are "inextricably intertwined." In addition, First Bank's argument assumes that

4

the provisions of the bond are ambiguous. If this is not the case, discovery related to bad faith is entirely irrelevant.

"In third-party and first-party cases alike, coverage issues commonly hinge on an issue of contract interpretation and are frequently, although not always, adjudicated on summary judgment motions." *Galloway v. Nationwide Mut. Fire Ins. Co.*, No. 3:09-CV-491-JDM, 2010 WL 3927815, at *1 (W.D. Ky. Oct. 5, 2010). Delaying discovery of bad faith claims can serve to "streamline adjudication." *Id.* The declaratory judgment and breach of contract claims will establish whether First Bank's claimed losses are covered by the Bond. These issues must be resolved before the bad faith claims may proceed. The facts of this case are not inextricably intertwined and "it is logical to delay . . . discovery of bad faith issues until there is reasonable certainty that discovery will be necessary." *Sanders v. Motorists Mut. Ins. Co.*, No. 3:08-37-DCR, 2008 WL 4534089, at *3 (E.D. Ky. Oct. 7, 2008). Accordingly, the Court finds that bifurcation is appropriate and grants BancInsure's motion.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion to Bifurcate Defendant's Unfair Claims Settlement Practices Act Claim and Common Law Bad Faith and Fraud Claim, and to Stay Discovery on Said Claims is GRANTED.